UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

ERNEST GRAY,   Case No. 2:19-cv-14385

    Plaintiff,

  v.

CITIBANK N.A.,

    Defendant.

_____/

## MOTION TO COMPEL ARBITRATION OF DEFENDANT CITIBANK, N.A.

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ("FAA"), defendant Citibank, N.A. ("Citibank") respectfully files this Motion to Compel Arbitration (the "Motion"), moving for the entry of an order compelling plaintiff Ernest Gray ("Plaintiff") to arbitrate his claims against Citibank pursuant to the terms of the arbitration agreement (the "Arbitration Agreement") contained in the credit card agreement (the "Card Agreement") governing the account at issue. Citibank further seeks to stay this case during the pendency of any arbitration. In support, Citibank states as follows:

### I.   INTRODUCTION AND BACKGROUND

In this case, Plaintiff contends that Citibank violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA") and the Florida Consumer Collection Practices Act, Florida Statutes sections 559.55-559.785, (the "FCCPA") based on alleged calls Citibank made to Plaintiff regarding his Citibank credit card. Regardless of their merits, the claims are subject to the Arbitration Agreement contained in the terms and conditions of the Card Agreement

MIA 31437713

governing Plaintiff's credit card account. Therefore, the claims must be arbitrated on an individual basis.

The Card Agreement contains an agreement to arbitrate which expressly authorizes either Citibank or the customer to elect arbitration of any dispute between the parties. As demonstrated below, the Arbitration Agreement is a valid and enforceable agreement to arbitrate under both the Federal Arbitration Act and South Dakota law (which applies here pursuant to a choice-of-law provision in the terms and conditions); and it completely encompasses the claims in this lawsuit. By its terms, the Arbitration Agreement broadly encompasses "all Claims… no matter what legal theory they are based on . . . including . . . statutory or regulatory provisions." The Arbitration Agreement also advises that it must be enforced pursuant to the FAA. Importantly, the FAA mandates a liberal policy favoring the enforcement of arbitration agreements and requires that any doubts regarding whether a dispute is subject to arbitration be resolved in favor of arbitration.

Federal courts also have stated resoundingly that the FAA shall be construed broadly in favor of arbitration. Recently, in Epic Systems Corporation v. Lewis, 138 S. Ct. 1612 (2018), the United States Supreme Court again reiterated the FAA mandate that arbitration agreements must be enforced. Following this ruling, in the Middle District of Florida case Ainsworth v. Citibank, N.A., No. 8:17-cv-2206-T-17JSS, ECF No. 23 (June 1, 2018), the court issued a decision enforcing a virtually identical Citibank arbitration agreement in a case involving statutory claims under the TCPA and FCCPA claims, stating: "Just a few days ago, the Supreme Court reaffirmed that federal statute requires the Court to enforce arbitration agreements." Id. at *1. This is consistent with other decisions from the United States Supreme Court and the Eleventh Circuit that have confirmed that the FAA, which unquestionably applies here, "reflects

an 'emphatic federal policy in favor of arbitral dispute resolution'"[1] and that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"[2]  Indeed, the decision in AT&T Mobility v. Concepcion makes absolutely clear that arbitration agreements must be enforced as written.  Moreover, as discussed below, courts across the country have repeatedly granted motions to compel arbitration based on the same, or similar, Citibank arbitration agreement as presented here.

Here, the Arbitration Agreement expressly requires arbitration of any claims relating to Plaintiff's account or the parties' relationship, including statutory claims.  Plaintiff's claims clearly fall within the scope of the Arbitration Agreement.  Based on the foregoing, and as explained in more detail below, the Motion should be granted, and this dispute submitted to arbitration pursuant to the Arbitration Agreement.  In addition, this action must be stayed pursuant to Section 3 of the FAA pending completion of the arbitration.

## II.   STATEMENT OF FACTS

Plaintiff purports to assert claims for violations of the TCPA and FCCPA based on allegations that Citibank called his cellular telephone with a prerecorded voice after he instructed Citibank to stop calling.  As confirmed in the Declaration of Andrew Grayot (the "Grayot Decl.," attached hereto as **Exhibit A**), Citibank, which is a national bank located in Sioux Falls, South Dakota, issues credit card accounts to persons throughout the country, including the Home Depot

---

[1] KPMG LLP v. Cocchi, 565 U.S. 18, 21 (2011) (per curiam) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985)).

[2] AT&T Mobility v. Concepcion, 563 U.S. 333, 344, 131 S. Ct. 1740, 1748 (2011); see also Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp., 130 S. Ct. 1758, 1774 (2010) (confirming that "[u]nderscoring the consensual nature of private dispute resolution" is the notion that "parties are 'generally free to structure their arbitration agreements as they see fit.'" (citations omitted)); Pendergast v. Sprint Nextel Corp., 691 F.3d 1224 (11th Cir. 2012) (enforcing Concepcion).

credit card account currently ending in 6275 issued to Plaintiff (the "Account"). Grayot Decl. ¶¶ 1, 4.

The Card Agreement governing the Account contains a choice of law provision providing for the application of federal law and the law of South Dakota, where Citibank is located. Id. at Ex. 3, p. 6 ("Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement"). Critically here, the Arbitration Agreement provides that either party can elect mandatory binding arbitration as follows:

> ### ARBITRATION
>
> *PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*
>
> **THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAT IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**
>
> **Covered Claims**
>
> - *You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").
> - **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**
>
> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-

4

> claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or any affiliated/parent/subsidiary company.

Id. at Ex. 3, p. 5 (emphasis in original).  The Arbitration Agreement also includes terms allowing for the arbitration to proceed in a locale convenient to the cardholder.  Id.  Citibank provided the Card Agreement to Plaintiff.  Id. ¶ 8.  Following receipt of the Card Agreement, Plaintiff used the credit card for the subject Account.  Id. ¶ 12 & Ex. 4.

### III.    ARGUMENT

**A.    Plaintiff's Claims Are Subject to Binding Arbitration Pursuant to the Arbitration Agreement and Settled Authority.**

   **1.    Under the FAA, this Court Must Compel Arbitration Pursuant to the Express Terms of the Arbitration Agreement.**

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce… shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; see also Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.").  As the Supreme Court has confirmed, this provision of the FAA "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms."  AT&T Mobility, 131 S. Ct. at 1745 (citations omitted).[3]

---

[3] The U.S. Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce.  See, e.g., Allied-Bruce Terminix

As the Supreme Court further confirmed, the "overarching purpose of the FAA, evident in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." Id. at 1748.  By consenting to bilateral arbitration, the "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution:  lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." Stolt-Nielsen, 559 U.S. at 685 (citations omitted).  In fact, the Supreme Court recently reaffirmed the broad holding of its prior, seminal decision in AT&T Mobility.  See Epic Sys. Corp., 138 S. Ct. at 1632.

Under the FAA, enforcement of an arbitration agreement entails a "two-step inquiry": (1) "whether the parties agreed to arbitrate the dispute"; and (2) "whether 'legal constraints external to the parties' agreement foreclosed arbitration.'" Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004) (citation omitted).  The second step concerns whether "Congress has clearly expressed an intention to preclude arbitration of [a] statutory claim." Davis v. S. Energy Homes, Inc., 305 F.3d 1268, 1273 (11th Cir. 2002) (quotation marks and emphasis omitted).  An arbitration agreement governed by the FAA, like the Arbitration Agreement here, is presumed to be valid and enforceable.  See Palidino v. Avnet Computer Technologies, Inc., 134 F.3d 1054, 1057 (11th Cir. 1998) (The FAA "creates a presumption in favor of arbitrability").  Furthermore, it is well settled that the party resisting arbitration bears the burden of showing that the Arbitration Agreement is invalid or does not encompass the claims at issue.  Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92 (2000).

---

Cos. v. Dobson, 513 U.S. 265, 277 (1995); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 (1967).  Here, there is no question that the FAA applies to this dispute between Plaintiff, a Florida resident, and Citibank, a national banking association located in Sioux Falls, South Dakota.

Federal courts, from the United States Supreme Court to Federal Courts in Florida, have stated resoundingly that the FAA shall be construed broadly in favor of arbitration. As noted above, in Ainsworth v. Citibank, N.A., Case No. 8:17-cv-2206-T-17JSS, Doc. No. 23 (June 1, 2018), the Middle District of Florida enforced a virtually identical arbitration agreement in a case involving statutory claims, stating "Just a few days ago, the Supreme Court reaffirmed that federal statute requires the Court to enforce arbitration agreements." (citing Epic Sys. Corp., 138 S. Ct. at 1632). Recognizing these principles, numerous courts across the country, including in Florida, have upheld and enforced virtually identical arbitration agreements utilized by Citibank. See, e.g., Umana v. Citigroup, Inc., Case No. 0:18-cv-60977, Doc. No. 21 (M.D. Fla. November 5, 2018); Scharrer v. Citibank, N.A., Case No. 8:18-ap-00119-RCT, Doc. No. 19 (M.D. Fla. June 21, 2018); Cusolito v. Citibank, N.A., Case No. 0:17-cv-60963, 2017 WL 8890662 (S.D. Fla. Oct. 6, 2017); Lenkowski v. Citibank, N.A., Case No.8:16-cv-03472-CEH-AAS, Doc. No. 24 (M.D. Fla. Apr. 18, 2017); Kardonick v. Citigroup Inc., No. 1:10-cv-23023-JLK, Doc. No. 68 (S.D. Fla. Mar. 25, 2013); Drozdowski v. Citibank, Inc., 2016 WL 4544543 (W.D. Tenn. 2016); McCormick v. Citibank, N.A., 2016 WL 107911, at *4 (W.D.N.Y. 2016); Carr v. Citibank, N.A., 2015 WL 9598797, at *1 (S.D.N.Y. 2015); Clookey v. Citibank, N.A., 2015 WL 8484514, at *2 (N.D.N.Y. 2015); Cayanan v. Citi Holdings, Inc., 928 F. Supp. 2d 1182 (S.D. Cal. 2013); Coppock v. Citigroup, Inc., 2013 WL 1192632 (W.D. Wash. 2013); Ackerberg v. Citicorp USA, Inc., 898 F. Supp. 2d 1172 (N.D. Cal. 2012); Orman v. Citigroup, Inc., 2012 WL 4039850 (S.D.N.Y. Sept. 12, 2012); Daugherty v. Experian Information Solutions, Inc., 847 F. Supp. 2d 1189 (N.D. Cal. 2012); Eaves-Leonos v. Assurant, Inc., 2008 WL 80173, at *6-7 (W.D. Ky. 2008); Taylor v. Citibank USA, N.A., 292 F. Supp. 2d 1333 (M.D. Ala. 2003); Ingram v. Citicorp Credit Servs., Inc. (USA), 2005 WL 6518077 (W.D. Tenn. 2005), mag. recomm.

MIA 31437713

adopted at 2005 WL 6518076 (W.D. Tenn. 2005); Citibank USA v. Howard, 2002 WL 34573997 (S.D. Miss. 2002); Dumanis v. Citibank (South Dakota), N.A., 2007 WL 3253975, at *3 (W.D.N.Y. 2007); Sesto v. Nat'l Fin. Sys., Inc., 2005 WL 6519430 (N.D. Ill. 2005); Barker v. Citibank (South Dakota), N.A., 2003 WL 25943008 (W.D. Tex. 2003); Lowman v. Citibank (South Dakota), N.A., 2006 WL 6108680, *3-4 (C.D. Cal. 2006).  The result should be the same here because the claims are clearly encompassed by the Arbitration Agreement.

    **2.    The Arbitration Agreement is Valid and Enforceable Under South Dakota Law.**

The Card Agreement, which contains the Arbitration Agreement, is expressly governed by a South Dakota choice-of-law provision.  Grayot Decl., Ex. 3, p. 6.  Thus, while the FAA exclusively governs the Arbitration Agreement's enforceability according to its terms, South Dakota law governs the determination of whether a valid agreement to arbitrate exists.  See Ackerberg, 898 F. Supp. 2d at 1176-77 (finding that "South Dakota and federal law govern the parties' agreements here" and that application of California law "has been squarely rejected"); Cayanan, 928 F. Supp. 2d at 1198 (holding that South Dakota law applies to Citibank's credit card agreement); Daugherty, 847 F. Supp. 2d at 1193-95 (holding that South Dakota law applied to Arbitration Agreement pursuant to choice-of-law provision in Card Agreement); Eaves-Leonos, 2008 WL 80173, *6 (holding that "South Dakota law applies to determine the validity of the Citibank arbitration agreement."); Dumanis, 2007 WL 3253975, *2 (reasoning that, "due to the Card Agreement's choice of law provision, the issue of unconscionability must be resolved using the law of South Dakota"); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally… should apply ordinary state-law principles that govern the formation of contracts.").

Here, it is undisputed that Plaintiff applied for and used the Account. See Grayot Decl. ¶¶ 4, 7, 12. The Arbitration Agreement itself states that by using the Account, Plaintiff agreed to be bound by all terms of the Card Agreement, including the Arbitration Agreement. See id. at Ex. 3, p. 3 ("This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card."). This provision is consistent with South Dakota law, which governs the Account. See S.D.C.L. § 54-11-9 ("The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card, and any charges made with the authorization of the primary card holder."). Thus, Plaintiff accepted the Arbitration Agreement as part of the contract with Citibank. See Lowman, 2006 WL 6108680, *3; see also Cayanan, 928 F. Supp. 2d at 1198 (finding that plaintiff agreed to arbitrate claims associated with her accounts when she continued to use each credit account after receiving cardmember agreement); Ventura v. 1st Fin'l Bank, 2005 WL 2406029, at *5 (N.D. Cal. 2005) (noting that S.D.C.L. § 54-11-9 "expressly authorizes contract formation by an individual's use of a credit card"); Fedotov v. Peter T. Roach & Assocs., P.C., 2006 WL 692002, at *2 (S.D.N.Y. 2006) (under South Dakota law, plaintiff was bound by using cards after receiving card agreements); Ackerberg, 898 F. Supp. 2d at 1176 (holding that plaintiff's use of her credit card constituted acceptance of the account agreement and noting the "numerous" courts[4] that have found the same). Moreover, South Dakota law, like

---

[4] See, e.g., Daugherty, 847 F. Supp. 2d at 1196; Lowman, 2006 WL 6108680 at *3–4; Dumanis, 2007 WL 3253975 at *2–3; Eaves–Leonos, 2008 WL 80173 at *3; see also Boomer v. AT&T Corp., 309 F.3d 404, 415 (7th Cir. 2002) (customer accepted terms of contract by failing to follow the non-acceptance instructions in the contract and continuing to use the services); Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir. 1997) (holding that a computer purchaser, by

federal law, strongly endorses arbitration. "If there is doubt whether a case should be resolved by traditional judicial means or by arbitration, arbitration will prevail." Rossi Fine Jewelers, Inc. v. Gunderson, 648 N.W.2d 812, 814 (S.D. 2002) ("We have consistently favored the resolution of disputes by arbitration… There is an overriding policy favoring arbitration when a contract provides for it."). Accordingly, under both the FAA and governing South Dakota law, the applicable Card Agreement, including the Arbitration Agreement, is binding on Plaintiff and must be enforced.

### 3. The Arbitration Agreement Clearly Encompasses Plaintiff's Claims.

Once it is determined that the parties have entered into an arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986); see also McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988) (noting the distinction between "broad" clauses that purport to refer to arbitration all disputes arising out of a contract and "narrow" clauses that limit arbitration to specific types of disputes). Where the clause is broad, as is the case here, there is a heightened presumption of arbitrability such that "'[i]n the absence of any express provision excluding a particular

---

electing to keep the computer that he purchased rather than returning it within a specified time period, agreed to be bound by an arbitration provision sent to him by the seller); Herrington v. Union Planters Bank, N.A., 113 F. Supp. 2d 1026, 1032 (S.D. Miss. 2000) ("[T]he plaintiffs accepted the terms of the arbitration agreement by continuing to utilize their accounts."); Marsh v. First USA Bank, N.A., 103 F. Supp. 2d 909, 919 (N.D. Tex. 2000) ("Plaintiffs continued to use their First USA credit cards after receipt of the amendments. Therefore, Plaintiffs… are contractually bound by the arbitration provision of their Cardmember Agreements."); Stiles v. Home Cable Concepts, 994 F. Supp. 1410, 1416 (M.D. Ala. 1998) (enforcing an arbitration provision contained in amendment to a credit card agreement because the plaintiff maintained his account after the effective date of the arbitration clause); Grasso v. First USA Bank, 713 A.2d 304, 309 (Del. Super. Ct. 1998) (holding that the plaintiff "unequivocally manifested acceptance" of her cardholder agreement by making purchases and payments on her account).

MIA 31437713

grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" AT&T Tech., 475 U.S. at 650; accord Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16, 20 (2d Cir. 1995) (holding that, where the clause is broad, "then there is a presumption that the claims are arbitrable").  In order to rebut the presumption, the party resisting arbitration must show that the Arbitration Agreement does not encompass the claims at issue.  Green Tree Fin. Corp.-Ala., 531 U.S. at 92.  As a matter of law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." See Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25.

      Here, there can be no genuine dispute that Plaintiff's claims are governed by the Arbitration Agreement.  The Arbitration Agreement extends to all Claims, including claims based on statutory or regulatory provisions.  See Grayot Decl., Ex. 3, p. 5.  Plaintiff asserts claims for violation of the TCPA and FCCPA.  It is well settled that statutory claims are subject to arbitration just like any other claims.  See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) ("it is by now clear that statutory claims may be the subject of arbitration"); Mitsubishi Motors, 473 U.S. at 628 (by agreeing to arbitrate a statutory claim, a party "does not forgo the substantive rights afforded by the statute [but] submits to their resolution in an arbitral . . . forum."); Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987) ("The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims.).  Indeed, numerous courts have found TCPA and FCCPA claims to be arbitrable.  See, e.g., Cayanan, 928 F. Supp. 2d at 1198–99 (citing numerous cases); Lenkowski at *10-11; Cusolito, 2017 WL 8890662 at *3.

Accordingly, because the Arbitration Agreement is valid and enforceable, and because the claims are encompassed by the Agreement, the Motion should be granted and this action should be sent to arbitration.

**B.      This Action Should Be Stayed Pending Arbitration.**

The FAA provides that a court, upon determination that an action before it is subject to an enforceable arbitration provision, "shall… stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; see Collins v. Burlington N. R. Co., 867 F.2d 542, 545 (9th Cir. 1989) (remanding case where district court failed to consider whether a stay was appropriate as a result of binding arbitration agreement); see also Suarez-Valdez v. Shearson Lehman/Am. Exp., Inc., 858 F.2d 648, 649 n.2 (11th Cir. 1988) (finding that a district court's denial of a motion to stay federal proceedings pending arbitration was "in direct contravention of" Supreme Court precedent). Accordingly, Citibank requests that this Court stay the action pending completion of arbitration between the parties.

### IV.      CONCLUSION

For all of the foregoing reasons, Citibank respectfully requests that the Court grant this Motion and compel arbitration of Plaintiff's claims on an individual basis in accordance with the express terms of the valid and enforceable Arbitration Agreement governing the Account. In addition, this action should be stayed pending completion of arbitration proceedings. WHEREFORE, Citibank respectfully requests that this Court enter the Proposed Order attached hereto as **Exhibit B**.

### LOCAL RULE 7.1(a)(3) CERTIFICATION

In compliance with Local Rule 7.1(a)(3), undersigned counsel certifies that she conferred with Plaintiff's counsel and Plaintiff opposes the relief requested herein.

MIA 31437713

Dated:  December 05, 2019   Respectfully submitted,

By: /s/  Alisa M. Taormina
Brian C. Frontino
Florida Bar No. 95200
Alisa M. Taormina
Florida Bar No. 70848
STROOCK & STROOCK & LAVAN LLP
200 South Biscayne Boulevard, Suite 3100
Miami, Florida 33131
Telephone:  (305) 358-9900
Facsimile:  (305) 789-9302
bfrontino@stroock.com
ataormina@stroock.com
lacalendar@stroock.com

Attorneys for Defendant
*Citibank, N.A.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the Clerk of the Court via CM/ECF on December 05, 2019, and served on all counsel or parties of record on the Service List below:

## SERVICE LIST

Joshua A Mize, Esq.
MIZE LAW, PLLC
110 Front Street, Suite 300
Jupiter, FL 33477
jmize@mizelaw.com

*Attorneys for Plaintiff*

/s/ Alisa Taormina
Alisa M. Taormina